IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MSPA CLAIMS I, LLC, a Florida entity,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 2:17-CV-513- KOB |
| ) | |
| **INFINITY PROPERTY & CASUALTY** ) | |
| **GROUP, an Alabama company,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION

"Oh! what a tangled web we weave / When first we practice to deceive!" Sir Walter Scott, Marmion, Canto VI, Stanza 17.

With its tangled web of assignments, receiverships, and fictitious entities, Plaintiff MSPA Claims I, LLC aims not to deceive but rather to catch a lucrative class action lawsuit under the Medicare Secondary Payer statute. But Defendant Infinity now challenges MSPA's standing to bring its claims at all, arguing in its motion to dismiss that certain strands of the web cannot withstand the court's scrutiny and that the entire structure must fail as a result. (Doc. 49).

For the reasons discussed below, this court will GRANT Defendant Infinity's motion to dismiss MSPA's remaining claims as lacking Article III standing. And the court will DISMISS WITH PREJUDICE MSPA's entire complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

   I. **Background**

Before 1980, Medicare was the primary payer for all claims except those covered by Workers' Compensation, Federal Black Lung benefits, and Veteran's Administration benefits.

*Medicare Secondary Payer*, CENTERS FOR MEDICARE & MEDICAID SERVICES, https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Coordination-of-Benefits-and-Recovery-Overview/Medicare-Secondary-Payer/Medicare-Secondary-Payer.html (last modified Jan 1, 2014). To promote the Medicare trust fund's solvency, Congress passed the Medicare Secondary Payer statute in 1980, making Medicare the "secondary payer" to certain primary plans and shifting costs to private sources of payment. *Id.*; 42 U.S.C. § 1395y.

Under the MSP statute, if Medicare pays for a service that a primary payer should have covered—known as a "conditional payment"—it can seek reimbursement from the primary payer or from the recipient of the payment, as well as damages if the primary payer fails to reimburse it. 42 U.S.C. § 1395y(b)(3)(A) ("There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . .").

Intersecting with the MSP statute is the existence of insurers called Medicare Advantage Organizations (MAOs), which can also serve as "secondary payers" and "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f).

Plaintiff's claims arise under the MSP statute and its implementing regulations, though Plaintiff is not itself an MAO. (Doc. 26 at ¶ 4). Instead, Plaintiff alleges standing as the *assignee* of the recovery rights of two MAOs—Florida Healthcare Plus, Inc. and Simply Healthcare Plans, Inc. In this putative class action lawsuit, Plaintiff alleges Defendant Infinity failed to make primary payments on the claims of two "exemplar" Medicare enrollees, identified as D.W. and B.G., and failed to reimburse the appropriate secondary payer organization. The court describes each exemplar's claim, along with its applicable chain of assignments below.

*Florida Healthcare Plus, Inc. and "D.W."*

Plaintiff MSPA alleges that Defendant Infinity provided car insurance, which included coverage for medical payments "for any automobile accident-related medical expenses," to a Medicare enrollee identified as D.W. (Doc. 26 at ¶ 3, 58, 69). D.W.'s car was rear-ended in 2013, and Infinity subsequently sent D.W. a letter indicating personal injury protection with a $10,000 limit and a $1,000 deductible. (Doc. 49-8). Infinity claims that, to date, it has paid every single medical bill related to D.W.'s claim as required by the policy and that D.W. still has $488.63 in benefits remaining under his policy. (Docs. 49 at ¶¶ 39–40 and 49-13).

Plaintiff alleges that Florida Healthcare Plus, an MAO, insured D.W. at all times relevant to the instant action and paid $140.47 on a $1,468.04 bill in 2013. (Doc. 60 at ¶¶ 99, 119). But Infinity disputes this relationship and asserts that Plaintiff has not produced sufficient evidence to establish any connection between D.W. and FHCP, much less that FHCP "paid a bill that Infinity had an obligation to pay, for which FHCP has not since been reimbursed." (Doc. 65 at 9–11). To establish FHCP's having paid an amount Infinity should have paid, Plaintiff points to (1) the affidavit of its own data analyst, (doc. 60-1); (2) a summary sheet of D.W.'s medical expenses, (doc. 60-3); (3) copies of two different claim and coverage summaries from third-party data aggregators, (docs. 60-7 and 60-8); and another affidavit from Plaintiff's own data analyst, (doc. 60-14).

FHCP assigned all its rights of recovery under the MSP statute to La Ley Recovery Systems, Inc. on April 15, 2014. (Doc. 35-3). Per the agreement, La Ley could not assign those recovery rights to a third party without FHCP's approval. (Doc. 35-3 at § 1.2). The Florida Department of Financial Services assumed these approval rights when it became receiver of FHCP on December 10, 2014. (Doc. 35-5 at 1).

La Ley attempted to re-assign FHCP's original recovery rights to Plaintiff MSPA on February 20, 2015, without the approval of FHCP's receiver. But after challenging and repudiating this attempted assignment, the receiver ultimately agreed to the assignment on June 1, 2016. (Doc. 49 at ¶ 14).

While earlier pleadings identified yet another attempted transfer between Plaintiff MSPA and former plaintiff MAO-MSO Recovery II, LLC, Plaintiff has since attributed that allegation to scrivener's error and moved to dismiss MAO-MSO from this case. (Doc. 60 at 26–27).

*Simply / InterAmerican and "B.G."*

Plaintiff also brings claims under the MSP statute pursuant to the recovery rights of MAO Simply Healthcare Plans, Inc. and its Management Service Organization (MSO) InterAmerican Medical Center Group, LLC.

Plaintiff alleges that Infinity provided car insurance that included coverage for automobile-accident-related medical expenses to a Medicare enrollee identified as B.G. (Doc. 26 at ¶ 3, 58, 69). B.G. was injured in a car accident in 2013 and timely reported her claim to Infinity. (Doc. 49 at ¶¶ 58–59). Infinity confirmed receipt of B.G.'s claim and internally indicated that B.G. had personal injury protection with a $10,000 limit and a $1,000 deductible.[1] (Docs. 49-19 at 9, 49-23 at 2). Infinity claims that it paid all medical bills related to B.G.'s claim as required by the policy and that B.G. exhausted her benefits under her policy on July 5, 2013. (Doc. 49 at ¶ 62).

Plaintiff alleges MAO Simply insured B.G. and contracted with MSO InterAmerican to manage and provide healthcare services for certain enrollees, including B.G. (Doc. 60 at 33).

---

[1] Other documents in the record indicate that B.G.'s policy deductible was actually $0, (doc. 49-19 at 6), but neither party notes the discrepancy or indicates that it has any relevance.

According to Plaintiff, the Simply–InterAmerican contract either assigned to InterAmerican Simply's MSP statutory recovery rights as to claims InterAmerican serviced under the contract or made InterAmerican a potential secondary payer under the MSP statute. (Doc. 60 at 33–36). But Infinity contends the agreement "is not a clear assignment of any [MSP statute] claim to InterAmerican." (Doc. 49 at ¶ 47). Regardless, the agreement's express language provides that InterAmerican cannot assign "any rights, interests or obligations . . . without the prior written consent of Simply." (Doc. 35-1 at § 10.8).

Plaintiff alleges that InterAmerican subsequently assigned its MSP statutory recovery rights to former plaintiff MSP Recovery, LLC on December 16, 2014. (Doc. 35-2 at 8–20). The purported assignment agreement is thirteen pages of purely boilerplate language, except for blank spaces for names, dates, and signatures on the first and last pages. The contract identifies the "Client," or assignor, as "IMC." Where the final page of the agreement includes blank spaces for Client's signature and printed name, Jessica Alcantara, a manager of InterAmerican at the time of execution, signed and printed her own name. The agreement requires the Client's prior approval of any subsequent assignees "unless the assignment is ministerial in nature." (Doc. 35-2 at § 1.2).

As the final strand in its web, Plaintiff alleges that MSP Recovery assigned the MSP statutory recovery rights it allegedly acquired from InterAmerican to Plaintiff MSPA on February 12, 2015. (Doc. 35-2 at 2–7). But the assignment identifies "IMC, LLC" as the assignor to MSP Recovery, not InterAmerican or IMC. IMC, LLC appears to be a Florida limited liability company completely unrelated to any of the parties in this case. (Doc. 49-18).

Defendant's motion represents its second attempt to dismiss Plaintiff's complaint for lack of standing. (*See* Doc. 49). This court previously denied Infinity's facial attack on standing,

stating that MSPA "has standing because it has submitted evidence of a valid assignment of a Medicare Advantage Organization's rights to recovery and reimbursement." (Doc. 38 at 7). Importantly, this court only found sufficient Plaintiff's evidence of FHCP's assignment to La Ley and La Ley's assignment to MSPA. The court did *not* address standing as it relates to the representative beneficiaries, D.W. and B.G., and explicitly emphasized "that the other named Plaintiffs[2] [would] eventually have to shoulder their burden of *proving* valid assignments that give them standing to bring their claims." (Doc. 38 at 7) (emphasis in original).

Since the court's Order denying Infinity's first motion to dismiss, the parties have engaged in preliminary discovery, with a specific emphasis on addressing the lingering questions of standing. (Doc. 38 at 8) ("And this court stresses that, once discovery begins, addressing standing will be the court's highest priority."). Infinity filed the motion to dismiss now before the court with over thirty attached exhibits comprising nearly 300 pages. (Doc. 49). MSPA's response includes twenty exhibits comprising nearly 300 additional pages. (Doc. 60). Finally, Infinity's reply includes 135 more pages of exhibits. (Doc. 65).

## II. Standard of Review

Defendant Infinity's motion purports to request summary judgment but actually presents arguments for dismissal under Federal Rule of Civil Procedure 12(b)(1). (*See* Doc. 49).

Federal Rule of Civil Procedure 12(b)(1) permits a district court to dismiss for "lack of subject-matter jurisdiction." "Article III of the Constitution confines the reach of federal jurisdiction to 'Cases' and 'Controversies.'" *Alabama-Tombigbee Rivers Coal. v. Norton*, 338 F.3d 1244, 1252 (11th Cir. 2003) (quoting U.S. Const. art. III, § 2). To establish Article III

---

[2] This case initially included three plaintiffs but now only includes MSPA, though MSPA attempts to bring the claims former-plaintiff MAO-MSO Recovery originally brought. MSPA still bears the burden of showing standing at to those claims, because "a plaintiff must demonstrate standing for each claim . . . ." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).

standing, the plaintiffs bear the burden of showing (1) an "injury in fact"; (2) a "causal connection between the injury and the conduct complained of"; and (3) "that the injury will be redressed by a favorable decision." *Bluedorn v. Grube*, 631 F.3d 1218, 1228 (11th Cir. 2011) (quotations marks omitted). The injury must be "'concrete and particularized' and 'actual or imminent.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560).

"A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). When a defendant makes a factual attack, it can introduce evidence outside the pleadings to challenge subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

A trial court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" without attaching "presumptive truthfulness . . . to plaintiff's allegations." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981), *cert. denied*, 454 U.S. 891 (1981). "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). As long as a plaintiff has "ample opportunity to present evidence bearing on the existence of jurisdiction," a trial court can make the determination as to whether it met its burden. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (quoting *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)).

**III. Discussion**

Plaintiff MSPA filed this lawsuit nearly two years ago, and the parties have exchanged and filed hundreds of pages of discovery. So this court concludes Plaintiff has had "ample opportunity to present evidence bearing on the existence of jurisdiction." *See Morrison v. Allstate Indem. Co.*, 228 F.3d at 1273. Assessing the evidence not in the light most favorable to the nonmovant but as a factfinder, this court determines that Plaintiff has not established by a preponderance of the evidence that it has standing to bring any of the claims in its complaint. The court will GRANT Defendant's motion to dismiss and will DISMISS WITH PREJUDICE Plaintiff's entire case under Rule 12(b)(1).

*FHCP assignments*

Plaintiff MSPA attempts to build a web of connections and assignments to establish its standing to bring claims pursuant to FHCP's original MSP recovery rights. But Defendant argues the web fails for want of its very first connection—FHCP to D.W., the exemplar Medicare enrollee Infinity admits it insured. In its motion to dismiss, Defendant asserted that Plaintiff had not produced a single document linking FHCP and D.W. (Docs. 49 at 22). Plaintiff responded with additional documents indicating D.W. as being FHCP's insured. (Doc. 60-7 at 3). After reviewing those, this court determines Plaintiff has met its burden of establishing that D.W. was FHCP's insured at all times relevant to this case.

Infinity also argues that MSPA's web fails to establish that La Ley ever legally assigned its MSP statutory rights to MSPA. But this court already addressed the validity of the assignments from La Ley to MSPA and determined they were sufficient to establish standing. (Doc. 38 at 7). Undeterred, Defendant Infinity points to recent decisions in very similar cases across the country for the proposition that neither FHCP nor its eventual receiver approved La

Ley's assignment to MSPA, as contractually required. (*See* Docs. 69 and 71); *see also MSP Recovery, LLC v. Allstate Ins.*, 276 F. Supp. 3d 1311, 1316 (S.D. Fla 2017); *MSPA Claims 1, LLC v. United Auto. Ins.*, 204 F. Supp. 3d 1342, 1345 (S.D Fla. 2016); *MSPA Claims 1, LLC v. First Acceptance Ins.*, 16-20314-CIV-WILLIAMS, 2016 WL 4523850 (S.D. Fla. Aug. 29, 2016).

After reviewing the cases Infinity cites, as well as several it did not, this court notes that the rationale of other courts dismissing MSPA's FHCP claims for an invalid assignment chain have almost exclusively relied on the plaintiff's having filed its complaint before June 1, 2016—the date of the settlement agreement between the FHCP's receiver and La Ley, in which the receiver retroactively approved La Ley's previous assignment to MSPA. So the analysis is different for cases, such as the one currently before this court, filed after June 1, 2016, the date MSPA's assignments from La Ley became legally enforceable. *See MSPA Claims 1, LLC v. Tenet Fla., Inc.*, No. 18-11816, 2019 WL 1233207, at *4 (11th Cir. Mar. 18, 2019); *see also MAO-MSO Recovery II, LLC v. State Farm Mutual Auto. Ins.*, 1:17-CV-1537-JBM-JEH, 2018 WL 3420796, at *5 (C.D. Ill. July 13, 2018).

Infinity responds that the June 1 agreement required a final settlement payment a year after execution and that Plaintiff has not provided evidence that La Ley ever made that payment. Stating that the failure to provide such payment would nullify the assignment agreement between La Ley and MSPA, Infinity asks this court to treat Plaintiff's failure to provide evidence of final payment as an admission that La Ley has not made the payment. (Doc. 65 at 11).

But even if La Ley failed to make the final settlement payment, the agreement militates against the conclusion Infinity asks this court to make. The agreement provides that "prior to payment of the Final Settlement Payment . . . the Parties shall not assign this Settlement Agreement . . . without prior written approval of the other Party." (Doc. 35-5 at § 20). But the

very next sentence provides an exception—"the Assigned Claims may be assigned by and among any of the companies collectively referred to herein as 'La Ley,' and . . . any assignment of the rights described hereunder by or among those companies collectively referred to as 'La Ley' occurring prior to the execution of this Settlement Agreement shall be valid and enforceable." (*Id.*). The agreement defines "La Ley" to include both La Ley *and* MSPA. (Doc. 35-5 at 1). So the assignment from La Ley to MSPA was by and among the companies referred to as "La Ley" and was therefore valid before the final settlement payment.

The court concludes that MSPA has established by a preponderance of the evidence that FHCP validly assigned its rights under the MSP statute to La Ley, that La Ley validly assigned those rights to MSP Recovery, and that MSP Recovery validly assigned those rights to Plaintiff MSPA. So if MSPA can show that FHCP ever had standing to bring a claim under the MSP statute, it will satisfy its burden to show its own standing as to the FHCP rights.

*FHCP's standing*

Infinity asserts that MSPA has failed to establish that FHCP ever had standing because it has failed to show that FHCP suffered an injury in fact. (Doc. 65 at 9–11). Specifically, Infinity argues that establishing standing would at least require MSPA to show that FHCP ever paid a bill on D.W.'s claim.

On a facial attack on standing, MSPA's mere allegations that FHCP suffered an injury in fact by making unreimbursed payments on D.W.'s claim would be enough to survive dismissal. But Infinity now brings a factual attack, arguing that MSPA has failed to establish by a preponderance of the evidence that FHCP made any payment on D.W.'s claim. Infinity does not offer any evidence itself showing FHCP did *not* make a payment on D.W.'s claim; it instead questions why, after almost two years of litigation, MSPA has failed to produce a single

document definitively showing that FHCP ever paid the amounts on D.W.'s claim that MSPA alleges it did. (Doc. 65 at 9–11).

MSPA offers two affidavits to show FHCP made payments on D.W.'s claim. (Docs. 60-1 and 60-14). Natasha Blanco, a current employee of former-plaintiff MSP Recovery, testified that, as part of her job, she reviews thousands of claim files to determine when claims are filed, what amounts are billed and paid, when payments are made, and, most important to the matter at hand, *who* made the payments. (Doc. 60-1 at ¶¶ 12–13, 15, 19). Ms. Blanco's affidavit specifically mentions that she analyzed FHCP claims data. (Doc. ¶ 30.2). But Ms. Blanco's affidavit does not attach any claims data, instead only referencing four "FHCP underlying claim lines," attached as Exhibit 2. (Docs. 60-1 at ¶ 39 and 60-3). Exhibit 2 confusingly does not make reference to FHCP or any amounts FHCP paid on D.W.'s claim but rather shows four *billed* amounts and the healthcare provider that billed those amounts. Still, Ms. Blanco testifies that, according to her own examination of FHCP's claim data, FHCP paid amounts ranging from $0.00 to $85.13 on the four claims, totaling $140.47. (Doc. 60-1 at ¶ 39).

Jorge Santana, also an employee of MSP Recovery, reached the same conclusions as Ms. Blanco, similarly relying on "FHCP claims data" conspicuously absent from the record. (Doc. 60-14 at ¶¶ 56, 80). Confusingly, Mr. Santana diligently lays the foundation for introducing the claims data as a business record. (*See, e.g.*, Doc. 60-14 at ¶ 60) ("The original claims data from FHCP in its original format are stored and kept in the MSP System in the course of regularly conducted business activity."). And Mr. Santana boasts that MSP Recovery's system can provide the exact information this court now requires: "The MSP system is able to identify whether a primary payer made payment, . . . whether the MAO, MSO, or IPA made payment on the claim, . . . whether there was duplicate payment by the MAO, MSO, IPA and/or primary payer, and

whether the MAO, MSO, or IPA was reimbursed for any payment made on the subject claim." (Doc. 60-14 at ¶ 41). But in the *more than 300 pages of documents* it produced in response to Defendant's motion, (*see* doc. 60 and exhibits), Plaintiff *still failed* to produce any of the FHCP claims data supposedly showing the MAO made payments on D.W.'s underlying claim.

Infinity asserts that these two affidavits are not enough for MSPA to meet its burden to show injury in fact. This court agrees. Plaintiff bears the burden to show standing, but its evidence of FHCP's injury in fact is simply insufficient to establish by a preponderance of the evidence that FHCP paid any amount connected to D.W.'s claim. Most troubling is Plaintiff's affiants referencing data that, if correct, would clearly establish FHCP made payments on D.W.'s claim. Yet neither the affiants nor MSPA introducing such data into the record. This indicates that Plaintiff knows what the court requires but due to a lack of either diligence or ability has not produced it.

So, even in the absence of any contradictory evidence from Infinity, the court concludes that MSPA, despite being given ample time and opportunity to do so, has failed to establish by a preponderance of the evidence that FHCP ever suffered an injury in fact. Because MSPA's standing to bring FHCP's assigned claim relied on FHCP having ever had standing, the court will GRANT Infinity's motion to dismiss Plaintiff's FHCP claim under Rule 12(b)(1) for lack of standing.

*Simply / InterAmerican Assignments*

Infinity also contends that MSPA has failed to draw an unbroken line from Simply's MSP recovery rights to itself as ultimate successor to those rights.

Again, Infinity attacks the very first connection, arguing that MSPA has failed to connect B.G. to either Simply or InterAmerican. (Doc. 49 at 29). But MSPA has shown that Simply

insured B.G., (doc. 60-4 at 2) and has produced the contract pursuant to which InterAmerican serviced Simply's Medicare enrollees, (doc. 35-1). So this court does not agree that Plaintiff has failed to connect Simply, InterAmerican, and the representative Medicare enrollee B.G.

Infinity also argues that the terms of the contract between Simply and InterAmerican do not actually assign Simply's MSP statutory recovery rights to InterAmerican. (Doc. 65 at 12). Alternatively, Infinity argues that even if Simply had assigned its recovery rights to InterAmerican, the agreement requires Simply's written approval for any subsequent transfers, evidence of which Plaintiff has not provided. (Doc. 49 at 24).

Plaintiff responds that Infinity misunderstands the nature of the contract between Simply and InterAmerican. According to MSPA, the contract established InterAmerican as an MSO and thus a "secondary payer" under the MSP statute, making InterAmerican's recovery rights as to B.G.'s claim statutory, not contractual, and its recovery rights freely assignable without Simply's approval. MSPA's position thus relies on the argument that MSOs can accrue secondary payer rights under the MSP statute just like MAOs.

The Eleventh Circuit recently ruled that MAOs accrue recovery rights under the MSP statute when they make conditional payments. *Humana Medical Plan Inc. v. Western Heritage Ins.*, 832 F.3d 1229 (11th Cir. 2016). So the MSP statute provides a private cause of action in at least three situations: "(1) an MAO who has made a conditional payment for health care services to a Medicare beneficiary; (2) a Medicare beneficiary whose healthcare services were paid by Medicare; or (3) a direct health care provider who has not been fully paid for services provided to a Medicare beneficiary." *MSP Recovery Claims, Series LLC v. Auto-Owners Ins.*, 1:17-CV-23841-PAS, 2018 WL 1953861, at *4 (S.D. Fla. Apr. 25, 2018) (citing *Humana*, 832 F.3d at 1229 (11th Cir. 2016); *Glover v. Liggett Group, Inc.*, 459 F.3d 1304 (11th Cir. 2006)).

The Eleventh Circuit has not yet decided if the MSP statute also supplies a private cause of action to *MSOs*, but district courts both in the Eleventh Circuit and elsewhere have overwhelmingly ruled that it does not. *See, e.g.*, *MSPA Claims I, LLC v. Liberty Mut. Fire. Ins.*, 322 F. Supp. 3d 1273, 1283 (S.D. Fla. 2018) ("Because none of the Assignors are a MAO, a Medicare beneficiary, or a medical provider that directly treated the Medicare beneficiaries in these claims, and thus lack standing to bring a private cause of action under the MSP[ statute], Plaintiffs also lack standing to bring a claim under [the MSP statute] based on the purported assignment of rights from the Assignors."); *MAO-MSO Recovery II, LLC et al. v. State Farm Mut. Auto. Ins.*, 1:17-CV-1541-JBM-JEH, 2018 WL 2392827, at *7 (C.D. Ill. May 25, 2018) ("There is simply *no support* in case law, the MSP provisions, or the Medicare website for Plaintiffs' proposition that MSOs should be treated as MAOs.") (emphasis in original); *MSP Recovery Claims, Series LLC v. ACE American Ins.*, 17-CV-23749, 2018 WL 1953861, at *4–6 (S.D. Fla. Mar. 9, 2018); *but see MAO-MSO Recovery II, LLC v. Mercury General*, 17-2525-AB and 17-2557-AB, 2018 WL 3357493, at *7 (C.D. Cal. May 23, 2018) ("However, this does not necessarily mean that MSOs do not have the same ability to assert a private right of action under the statutes as MAOs . . . ."). The line of cases out of the Southern District of Florida largely rely on *Humana* for the proposition that MSOs cannot accrue recovery rights under the MSP statute.

As an initial matter, the *Humana* decision ultimately comes down to statutory interpretation. *Humana*, 832 F.3d at 1236 ("MAOs have no cause of action absent a statutory basis."). The Eleventh Circuit noted that paragraphs (2)(A), (2)(B), and (3)(A) of § 1395y(b) "work together to establish a comprehensive MSP scheme" that forbids secondary payers from paying claims when a primary plan exists unless the payment is "conditional." *Id.*, at 1237. The Eleventh Circuit then considered "how an MAO fits within the MSP scheme." *Id.*, at 1237. First,

§ 1395w-22 indicates that "Medicare+Choice" organizations (an outdated term for MAOs) can make conditional secondary payments "pursuant to section 1395(b)(2)," which regulates secondary payments *by Medicare*. Second, several provisions throughout the Medicare Act and its implementing regulations collectively "clarify that Congress empowered (and perhaps obligated) MAOs to make secondary payments under the same circumstances *as the Secretary*." *Humana*, 832 F.3d at 1238 (emphasis added). So the Eleventh Circuit concluded that MAOs have payment obligations under the MSP statute "coextensive with that of the Secretary" and therefore have standing under the private cause of action. *Id.* That is, the MSP statute provides a private cause of action to parties that it empowers or obligates to make secondary payments under the same circumstances as Medicare.

The MSP statute neither empowers nor obligates InterAmerican, as an MSO, to make secondary payments. Plaintiff has not pointed to a single statutory provision, regulation, or even guidance from the CMS that contemplates MSOs and how they might fit into the secondary payer scheme. *See MAO-MSO Recovery II, LLC v. State Farm*, 2018 WL 2392827, at *6 (Furthermore, the Court does not see a single "IPA" or "MSO" listed [on the CMS website]."). InterAmerican's obligation to make payments on B.G.'s claim arose from its *contract* with Simply. Those obligations are contractual, not statutory, so InterAmerican's available causes of action are contractual, not statutory.

Thus, this court declines to expand the scope of potential plaintiffs under the MSP statute's private cause of action beyond what the Eleventh Circuit has previously permitted and concludes that InterAmerican, as an MSO, cannot accrue recovery rights under the MSP statute by virtue of its fulfilling its contract with Simply to perform functions similar to an MAO.

Because InterAmerican could not directly accrue secondary payer recovery rights on B.G.'s claim, InterAmerican could only have assigned such rights to MSP Recovery if (1) its contract with Simply first assigned InterAmerican those rights, *and* (2) Simply approved the subsequent assignment in writing. (Doc. 35-1 at § 10.8). Defendant disputes whether the contract actually assigns any recovery rights to InterAmerican, but the court does not need to address that question because MSPA has at least failed to produce any evidence that Simply approved any subsequent assignment by InterAmerican to MSP Recovery. Without that approval, any attempt by InterAmerican to assign whatever rights it did receive from Simply would be ineffective.

But even assuming InterAmerican rightfully held any secondary payer recovery rights, whether contractually assigned or statutorily accrued, the court doubts whether MSPA has sufficiently connected InterAmerican to IMC, or, alternatively, directly to MSP Recovery. The assignment agreement through which InterAmerican purportedly assigned its MSP statutory recovery rights to MSP Recovery does not include the legal name "InterAmerican Medical Center Group, LLC." Instead, the contract refers only to "IMC" and features the signature of Jessica Alcantara, who failed to indicate on whose behalf she signed the contract, though she was a manager of InterAmerican at the time. Further obfuscating matters, the assignment agreement between MSP Recovery and Plaintiff MSPA provides that MSP Recovery acquired the rights "pursuant to a contract . . . between *IMC, LLC* and MSP [Recovery]." (Doc. 60-18 at 16) (emphasis added). IMC, LLC did not exist as a Florida entity at the time the parties executed this contract and is currently an entity completely unrelated to the parties in this case. (Doc. 49-18)

But the assignment agreement between MSP Recovery and MSPA had the "IMC" assignment attached as Exhibit A, (doc. 60-18 at 16, 21–34), and Plaintiff has provided an affidavit from Ms. Alcantara in which she testifies that "IMC" refers to InterAmerican, (doc. 60-

16 at 6). The court's ruling on Defendant's motion now before the court does not require a final determination as to the efficacy of the assignment chain from InterAmerican to MSPA, but this court expresses doubt that Plaintiff has established by a preponderance of the evidence that the assignments are indeed valid.

Finally, even if MSPA were able to show that MSP Recovery ever rightfully held Simply's or InterAmerican's MSP statutory recovery rights, the contract between "IMC" and MSP Recovery requires that IMC approve all subsequent assignments in writing, unless "ministerial in nature." (Doc. 60-18). MSPA has not provided written approval from either IMC or InterAmerican of any subsequent assignments. So its assignment from MSP Recovery must be ministerial to be valid. The contract defines "ministerial in nature" as "an assignment wherein the majority control in MSP Recovery remains the same and the agreement in whole must be complied with by the assigned." (*Id.*).

The only evidence MSPA offers to substantiate that the assignment was ministerial is Ms. Alcantara's statement that InterAmerican "was aware of the subsequent assignment" and that "no prior written consent was needed to effectuate that subsequent assignment because it was ministerial in nature." (Doc. 60-16 at ¶ 8). Neither Ms. Alcantara nor MSPA explains how or on what basis she reached her conclusion, and MSPA does not otherwise provide any evidence or information tending to show that MSP Recovery's assignment to MSPA complied with the definition of ministerial. This court therefore cannot conclude that MSPA has met its burden of establishing by a preponderance of the evidence that MSP Recovery's assignment to MSPA was valid.

MSPA's purported web of assignments and secondary payer rights suffers from several defects, each of which is fatal to MSPA's standing to bring its claims as to Medicare enrollee

B.G. Concluding that MSPA has failed to establish by a preponderance of the evidence that it has standing to bring MSP statute claims pursuant to either Simply's or InterAmerican's underlying claims, this court will GRANT Infinity's motion to dismiss and will DISMISS WITH PREJUDICE all of MSPA's claims that rely on either Simply's or InterAmerican's MSP statutory rights.

### IV. Conclusion

For the reasons discussed above, this court will GRANT Defendant Infinity's motion to dismiss MSPA's remaining claims as lacking Article III standing. (Doc. 49). And the court will DISMISS WITH PREJUDICE MSPA's complaint in its entirety under Rule 12(b)(1) for lack of subject matter jurisdiction. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 18th day of March, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE